FILED IN CHAMBERS
U.S.D.C. - Atlanta

MAR 0 9 2012

James N. Hatten, Clerk
By: /s/ AmCauee
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NICOLE MITCHELL,

    Plaintiff

v.

THE WEATHER CHANNEL, LLC, NBC
UNIVERSAL MEDIA, LLC, BAIN
CAPITAL, THE BLACKSTONE GROUP,
L.P., and JOHN DOES 1-5,

    Defendants

CIVIL ACTION NO.
1:11-CV-3039-ODE

ORDER

    This civil suit alleging violation of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301, et seq. ("USERRA"), is before the Court on Defendants' motions to compel arbitration of the litigation and to dismiss the action. Defendants Bain Capital, NBC Universal Media, LLC, The Blackstone Group, L.P. and The Weather Channel, LLC (collectively "Defendants") first filed a motion to compel arbitration and dismiss or stay this action [Doc. 7]. Nicole Mitchell ("Plaintiff") has responded [Doc. 11], and Defendants have replied [Doc. 17]. Defendants have further moved to dismiss the complaint as to Bain Capital ("Bain"), The Blackstone Group, L.P. ("Blackstone"), and John Does 1-5 for failure to state a plausible claim for relief [Doc. 8]. Plaintiff has responded [Doc. 12], and Defendants have replied [Doc. 16].

    For the following reasons, Defendants' motion to compel arbitration and stay this action [Doc. 7] is GRANTED. Defendants' motion to dismiss Bain, Blackstone, and Does 1-5 [Doc. 8] is DISMISSED AS MOOT.

I.  Procedural and Factual History

The Weather Channel ("TWC"), owned by Defendants NBC, Bain and Blackstone, provides weather news and information [Doc. 7-1 ¶¶ 3, 4, 13]. Plaintiff was hired by Defendants in July 2004 as an On-Air Meteorologist for the Weather Channel [Doc. 1 ¶ 10]. The On-Camera Meteorologist Employment Agreement ("Employment Agreement") entered into by the parties directs that:

> all disputes arising out of or concerning the employment relationship or termination thereof between [TWC and Plaintiff], including, without limitation, any claim arising under any federal, state, or local law, regulation, or ordinance, shall be resolved timely and exclusively by final and binding arbitration pursuant to the Rules of the American Arbitration Association[.]

[Doc. 7-1 at 13-14]. The Employment Agreement incorporates a three-page Arbitration Agreement which requires arbitration of all "claims" against TWC or its parent companies arising out of application to, employment with, or separation from TWC. Claims are broadly defined as including, but not limited to:

> claims arising under Title VII of the Civil Rights Act of 1964, as amended; the Civil Labor Standards Act; the Americans with Disabilities Act; the Family and Medical Leave Act; the Employee Retirement Income Security Act; the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended; and any other federal law, state law, municipal law, local law, common law, or action arising in law, in equity, in contract (whether express or implied) or in tort[.]

[Id. at 18]. The agreement also provides that the arbitration is to be administered by the American Arbitration Association and governed by the Federal Arbitration Act ("FAA") [Doc. 7-1 at 18-20].

Plaintiff is a Captain in the United States Air Force Reserve and serves as a member of the Hurricane Hunters [Doc. 1 ¶¶ 8, 30]. In her complaint, Plaintiff alleges that she experienced disparate

treatment by her employer due to her military service [Doc. 1 ¶ 13]. Defendants were uncooperative and critical in accommodating Plaintiff's military schedule [Id. ¶¶ 16-21]. Plaintiff was repeatedly asked to work shifts which conflicted with her known military obligations [Id. ¶ 15]. After missing a mandatory makeup consultation due to her military obligations, Plaintiff was removed from the show "Your Weather Today" and placed on a less prestigious show that aired late at night and conflicted with Plaintiff's military obligations [Id. ¶ 22]. Defendants further requested that Plaintiff improperly comment on military affairs while working for Defendants [Id. ¶ 24]. Four days after Plaintiff returned from a two-week military service tour, she was informed that her contract would not be renewed [Id. ¶ 26].

Plaintiff alleges her unfavorable treatment and nonrenewal were due to Plaintiff's military service in violation of USERRA, which protects the rights of members of the uniformed services [Id. ¶¶ 31-42]. Plaintiff seeks damages for lost wages and lost reputation [Id. ¶¶ 43-48]. Plaintiff has refused Defendants' request to pursue her claims through arbitration [Doc. 7-2]. Defendants request dismissal of the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) or a stay of these proceedings pursuant to the Federal Arbitration Act.

II. Discussion

In enacting the FAA, Congress established a strong federal policy of enforcing arbitration agreements. Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987). "[A]ny doubts

concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). If a district court determines that the issues before it are referable to arbitration, it must refer the matter to arbitration; enforcement of the arbitration agreement is not discretionary. 9 U.S.C. § 3; Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985). Moreover, the court may only consider "issues relating to the making and performance of the agreement to arbitrate." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967). Generally speaking, an arbitration agreement signed by the contractual parties:

> is sufficient to require the district court to send any controversies to arbitration. Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract *in general*. Because the making of the arbitration agreement *itself* is rarely in issue when the parties have signed a contract containing an arbitration provision, the district court usually must compel arbitration immediately after one of the contractual parties so requests.

Chastain v. Robinson-Humphrey Co., 957 F.2d 851, 854 (11th Cir. 1992) (citations omitted) (emphasis in original). The Court must consider the following when determining whether to compel arbitration: 1) whether there is a valid written agreement to arbitrate; 2) whether the dispute between the parties falls within the scope of the arbitration agreement; and 3) whether the party asserting the claims has failed or refused to arbitrate the claims. Madden v. Prot. One Alarm Monitoring, Inc., 358 F. Supp. 2d 1218, 1220 (N.D. Ga. 2004) (Cooper, J.). There is no dispute that a valid written agreement exists between the parties or that

Plaintiff has refused to arbitrate her claim. The only issue in dispute is whether the dispute between the parties falls within the scope of the arbitration agreement.

Plaintiff agrees that claims under USERRA are arbitrable [Doc. 11 at 9, 13]. Plaintiff argues only that the contract signed by Plaintiff is not specific enough to encompass USERRA claims. Plaintiff relies exclusively on the decision of Breletic v. CACI, Inc.-Fed., 413 F. Supp. 2d 1329 (N.D. Ga. 2006) (Pannell, J.).[1] In Breletic, the plaintiff's job was eliminated while he was deployed on military duty. Id. at 1332. He subsequently brought a claim under USERRA for discrimination and failure to reinstate him. Id. The plaintiff had, however, signed an arbitration agreement with his employer requiring arbitration of "[a]ny controversy or claim arising out of, or relating to [the employment agreement], or its breach, or otherwise arising out of or relating to [his] recruitment by, [his] employment with, or the ending of [his] employment with, [the employer]." Id. at 1332-33. This arbitration agreement was subject to "any and all rights Breletic may have under USERRA." Id. at 1333 (internal punctuation omitted).

Statutory claims are generally arbitrable unless "Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991). Plaintiff bears the burden of proving that Congress intended to place limits

---

[1]Although the decision in Breletic is not binding on this Court, Fox v. Acadia State Bank, 937 F.2d 1566, 1570 (11th Cir. 1991), it may be considered for its persuasive authority.

5

on a waiver of judicial forum. <u>Rodriguez de Quijas v. Shearson/American Express, Inc.</u>, 490 U.S. 477, 483 (1989). If Congress has such an intention, it will be found in the text of the statute, the legislative history of the statute, or an inherent conflict between arbitration and the statute's underlying purpose. <u>Gilmer</u>, 500 U.S. at 26. Accordingly, in <u>Breletic</u>, Judge Pannell looked to the text of USERRA, its legislative history and its underlying purpose to determine whether claims brought under USERRA were arbitrable. <u>Breletic</u>, 413 F. Supp. 2d at 1335. The legislative history[2] imparts that:

> It is the Committee's intent that, even if a person protected under [USERRA] resorts to arbitration, any arbitration decision shall not be binding as a matter of law. See <u>Kidder v. Eastern Airlines, Inc.</u>, 469 F. Supp. 1060, 1064-65 (S.D. Fla. 1978).

---

[2]The preceding portion of the House Report on USERRA's relation to other law and agreements states that:

> Section 4302(b) [of USERRA] would reaffirm a general preemption as to State and local laws and ordinances, as well as to employer practices and agreements, which provide fewer rights or otherwise limit rights provided under amended chapter 43 or put additional conditions on those rights. See <u>Peel v. Florida Department of Transportation</u>, 600 F.2d 1070 (5th Cir. 1979); <u>Cronin v. Police Dept. of City of New York</u>, 675 F. Supp. 847 (S.D.N.Y. 1987) and <u>Fishgold</u> [<u>v. Sullivan Drydock & Repair Corp.</u>, 328 U.S. 275,] 285 [1946], which provide that no employer practice or agreement can reduce, limit or eliminate any right under chapter 43. Moreover, this section would reaffirm that additional resort to mechanisms such as grievance procedures or arbitration or similar administrative appeals is not required. See <u>McKinney v. Missouri-K[ansas]-T[exas] R. Co.</u>, 357 U.S. 265, 270 (1958); <u>Beckley v. Lipe-Rollway Corp.</u>, 448 F. Supp. 563, 567 (N.D.N.Y. 1978). . . .

H.R.Rep. No. 103-65, 1994, as reprinted in 1994 U.S.C.C.A.N. 2453.4.

> The Committee wishes to stress that rights under [USERRA] belong to the claimant, and he or she may waive those rights, either explicitly or impliedly, through conduct. Because of the remedial purposes of [USERRA], any waiver must, however, be clear, convincing, specific, unequivocal, and not under duress. Moreover, only known rights which are already in existence may be waived. See Leonard v. United Airlines, Inc., 972 F.2d 155, 159 (7th Cir. 1992). An express waiver of future statutory rights, such as one that an employer might wish to require as a condition of employment, would be contrary to the public policy embodied in the Committee bill and would be void.

H.R.Rep. No. 103-65, 1994, as reprinted in 1994 U.S.C.C.A.N. 2453.4. It is because of this House Report that the Breletic court concluded that only a clear, convincing, specific, and unequivocal waiver of judicial forum could be enforced. The Breletic plaintiff's consent to arbitration "subject to any and all rights . . . under USERRA" was not a clear and unequivocal consent to arbitration of USERRA claims. Breletic, 413 F. Supp. 2d at 1338. This provision was sufficient to create doubt as to whether USERRA claims were arbitrable under the contract. Id. Plaintiff relies on the Breletic court's interpretation of USERRA's legislative history in arguing that USERRA imparts a right to a judicial forum and that only a "clear, convincing, specific, [and] unequivocal" waiver of that forum may be enforced. Id. at 1337-38.

Since the Breletic decision, a number of courts have enforced arbitration of USERRA claims without requiring the express waiver of judicial forum advocated by Plaintiff. E.g., Landis v. Pinnacle Eye Care, LLC, 537 F.3d 559 (6th Cir. 2008) (enforcing arbitration agreement which applied to "any controversy, dispute or disagreement arising out of or relating to this Agreement"); Garrett v. Circuit City Stores, Inc., 449 F.3d 672 (5th Cir.

2006)(enforcing arbitration agreement which applied to "claims arising out of cessation of employment"); <u>Kitts v. Menards, Inc.</u>, 519 F. Supp. 2d 837 (N.D. Ind. 2007)(enforcing arbitration agreement which applied to "all problems, claims, and disputes experienced within my work area"); <u>Will v. Parsons Evergreene, LLC</u>, No. 08-cv-00898-DME-CBS, 2008 WL 5330681 (D. Colo. Dec. 19, 2008). To require judicial resolution of USERRA claims absent express waiver, as Plaintiff seeks, would contravene "the presumption that arbitration provides a fair and adequate mechanism for enforcing statutory rights." <u>Dale v. Comcast Corp.</u>, 498 F.3d 1216, 1223 (11th Cir. 2007) (quoting <u>Kristian v. Comcast Corp.</u>, 446 F.3d 25, 54 (1st Cir. 2006)). Regarding the same legislative history relied on in <u>Breletic</u>, the Fifth Circuit Court of Appeals held as follows:

> We disagree that this snippet of legislative history should affect our interpretation of Section 4302(b).[3] First, a powerful line of Supreme Court authority suggests that legislative history should rarely be used in statutory interpretation, because only the text of the law has been passed by Congress, not the often-contrived history. See, e.g., <u>Exxon Mobil Corp. v. Allapattah Servs. Inc.</u>, 545 U.S. 546, 125 S. Ct. 2611, 2626, 162 L.Ed.2d 502 (2005). Even if legislative history may be consulted to resolve statutory ambiguity, <u>id.</u>, we have found no ambiguity in this provision.

---

[3]Section 4302(b) addresses USERRA's relation to other laws and agreements, and states:

> This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

38 U.S.C. § 4302(b).

> Second, laying aside these controlling preliminary objections, the House Committee Report appears to be the only pertinent legislative history concerning § 4302(b); no comparable Senate Report has been identified. Such a scant record, unless explicit and on point, hardly proves Congress's intention toward all cases involving arbitration. Moreover, what was left out of the legislative history is noteworthy. There is no recognition in the report of Gilmer's then-recent endorsement of individual agreements to arbitrate. In any event, the totality of the quoted language, along with its imbedded citations, strongly suggests that Congress intended § 4302(b) only to prohibit the limiting of USERRA's substantive rights by union contracts and collective bargaining agreements, and that Congress did not refer to arbitration agreements between an employer and individual employee.

Garret, 449 F.3d at 679-80.

The Fifth Circuit's evaluation of this legislative history is persuasive that USERRA does not require express consent to arbitration of claims. Arbitration does not deny a party any substantive rights guaranteed by USERRA because "arbitration is merely a form of trial to be used in lieu of a trial at law." Rodriguez, 490 U.S. at 480. "An agreement to arbitrate under the FAA is effectively a forum selection clause . . . ." Garrett, 449 F.3d at 678 (citing EEOC v. Waffle House, Inc., 534 U.S. 279, 295 (2002)). The Garrett court further noted that federal employees can assert USERRA claims before the Merit Systems Protection Board, a non-judicial option, which evidences a congressional intent to allow alternate forums to resolve USERRA claims. Garrett, 449 F.3d at 679.

Further, the legislative history does not indicate a concern for preserving procedural USERRA rights in a contract between an individual employee and employer, as here. The citations in the legislative history, as noted by the Fifth Circuit, each discuss the preemption of a servicemember's rights under USERRA by either

9

collective bargaining or state law, not an individual employee's election to waive a USERRA procedural right. See id. at 680 n.10. The legislature's concerns regarding contractual relinquishment of USERRA rights do not clearly apply to Plaintiff's situation.

Having concluded that no express provision is required to arbitrate USERRA claims, it is apparent that Plaintiff's complaint falls within the scope of arbitrable claims under the Employment Agreement. The Employment Agreement dedicates three pages to describing the parties' agreement to arbitrate claims. The Agreement requires arbitration of all disputes which "includes, but is not limited to, claims arising under . . . any . . . federal law . . . ." [Doc. 7-2 at 17]. The fact that USERRA claims are not specifically listed does not preclude arbitration of those claims. "A party cannot avoid arbitration . . . because the arbitration clause uses general, inclusive language, rather than listing every possible specific claim." Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1221-22 (11th Cir. 2000) ("[W]e have noted that an arbitration agreement need not specifically list every federal or state statute it purports to cover.") (citation and internal quotation marks omitted). Plaintiff's employment contract contains no reservation as in Breletic which would make the parties' intent murky. The contract's agreement to arbitrate all claims arising under federal law requires arbitration of USERRA claims.

Plaintiff has failed to meet her burden of proving Congress's intent to preclude waiver of a jurisdictional forum for USERRA claims. 9 U.S.C. § 3 provides that:

10

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Accordingly, this action is stayed until arbitration has been had.

III. Conclusion

Defendants' motion to compel arbitration and to stay this action [Doc. 7] is GRANTED. Having granted Defendants' motion to compel arbitration, Defendants' motion to dismiss [Doc. 8] is DISMISSED AS MOOT. The instant action shall be stayed pending arbitration. The Clerk is DIRECTED to close the file administratively.

SO ORDERED, this 9 day of March, 2012.

_____
ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE